IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                              :
HT OF HIGHLANDS RANCH, INC.,  :      HON. JEROME B. SIMANDLE
et al.,                       :
                              :      Civil No. 07-5718 (JBS)
              Plaintiffs,     :
                              :
      v.                      :          OPINION
                              :
HOLLYWOOD TANNING SYSTEMS,    :
INC., et al.,                 :
                              :
              Defendants.     :
_____
```

APPEARANCES:

John T. Doyle, Esq.
GOLDSTEIN VALAS
12 Glenside Drive
Annandale, NJ 08801
     -and-
Rory A. Valas, Esq.
GOLDSTEIN VALAS
250 Summer Street
Boston, MA 02210
     Attorneys for Plaintiffs HT of Highlands Ranch, Inc.; RMB
     Enterprise, Inc.; Grandsole, Inc.; and Markwood Enterprises,
     Inc.

Jonathan M. Korn, Esq.
BLANK ROME, LLP
Woodland Falls Corporate Park
210 Lake Drive East
Suite 200
Cherry Hill, NJ 08002
     Attorney for Defendants Hollywood Tanning Systems, Inc.;
     Ralph Venuto, Sr.; and Ralph Venuto, Jr.

David S. Sager, Esq.
DAY PITNEY, LLP
P.O. Box 1945
Morristown, NJ 07962-1945
     Attorney for Defendant HT Franchising, LLC

David Hartman Colvin, Esq.
Scott Lee Vernick, Esq.
FOX ROTHSCHILD LLP
2000 Market Street
Tenth Floor
Philadelphia, PA 19103
    Attorneys for Defendant Highline Capital Corporation

**SIMANDLE**, District Judge:

I.   **INTRODUCTION**

In this action, Plaintiffs – four operators of Hollywood Tans franchises located in three states – allege that Defendants induced them into entering into unconscionable franchise agreements, defrauded them by sending them deceptive and inflated invoices, and violated the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Plaintiffs have sued the entity with which they entered into their franchise agreements, Hollywood Tanning Systems, Inc. ("HTS"); two of its officers, Ralph Venuto, Sr., and Ralph Venuto, Jr. (the "Venutos"); the company to which HTS assigned its interest in the franchise contracts, HT Franchising, LLC ("HT Franchising"); and Highline Capital Corporation ("Highline"), which provided three of the Plaintiffs with equipment leasing and financing services in connection with the operation of their Hollywood Tans franchises.

Presently before the Court are three motions: (1) a motion to dismiss and compel arbitration filed by HTS and the Venutos (the "HTS Defendants") [Docket Item 26]; and Highline's motions (2) to dismiss and for a more definite statement [Docket Item 27]

2

and (3) for sanctions pursuant to Rule 11, Fed. R. Civ. P [Docket Item 49].  For the reasons explained below, the Court will deny the HTS Defendants' motion to dismiss, grant in part and deny in part Highline's motion to dismiss and for a more definite statement, and deny Highline's motion for sanctions.

## II.  BACKGROUND

### A.  Facts

The facts of this dispute, taken from the Amended Complaint, Plaintiffs' RICO Case Statement, see, e.g., Bath Unlimited, Inc. v. Ginarte, O'Dwyer, Winograd and Laracuente, No. 04-3919, 2005 WL 2406097, at *1 (D.N.J. Sept. 29, 2005), and certain undisputedly authentic documents attached to Defendants' motions, see Delaware Nation v. Pennsylvania, 446 F.3d 410, 413 n.2 (3d Cir. 2006), are as follows.  Plaintiffs HT of Highlands Ranch, Inc. ("Highlands Ranch"), RMB Enterprise, Inc. ("RMB"), Grandsole, Inc. ("Grandsole"), and Markwood Enterprises, Inc. ("Markwood") are unaffiliated corporations located in three different states.[1]  (Am. Compl. ¶¶ 13-16.)  Each of the four Plaintiffs entered into a contract for the purchase of one or more Hollywood Tans franchises with HTS, a New Jersey

---

[1] Highlands Ranch is a Colorado corporation founded by James Hay.  (Am. Compl. ¶ 14.)  RMB is a Maryland corporation founded by Rosemary Blaylock.  (Id. at ¶ 16.)  Grandsole is an Ohio corporation founded by Bethany Bruner.  (Id. at ¶ 13.)  Markwood is a Maryland corporation founded by Mark Wood.  (Id. at ¶ 15.)

3

corporation, between August 2003 and October 2005.  (Id. at ¶¶
17, 31, 66, 103, 124.)  Each of these contracts contained an
arbitration clause which provided:

> All disputes, controversies or claims arising out of or
> relating to this Agreement shall be submitted for
> arbitration to a New Jersey office of the American
> Arbitration Association on demand of either party.  Such
> arbitration proceeding shall be conducted in New Jersey,
> and shall be heard by one arbitrator in accordance with
> the then[-]current Commercial Arbitration Rules of the
> American Arbitration Association. All matters within the
> scope of the Federal Arbitration Act (9 U.S.C. Sec. 1 et
> seq.) shall be governed by it.

(HTS Defs.' Br. Exs. A-D, section 17.L.)  According to the
Amended Complaint, prior to the commencement of this action,
Defendant HTS assigned its rights and obligations under the
franchising agreements to Defendant HT Franchising.  (Am. Compl.
¶ 18.)

Plaintiffs' Amended Complaint and RICO Case Statement allege
that the Defendants participated in two racketeering enterprises
that defrauded Plaintiffs: (1) "[t]he Hollywood Tans
Enterprise[,] . . . composed of HTS, its agents, officers, and
employees;" and (2) "[t]he Highline Leasing Enterprise[,] . . .
an association-in-fact composed of Highline, its agents,
officers, and employees, and HTS, its agents, officers, and
employees."  (RICO Case Statement at 4.)  With regard to the HTS
enterprise, the details of which are not essential to the
resolution of the motions presently under consideration,
Plaintiffs allege that in their dealings with representatives

4

from Highlands Ranch, RMB, Grandsole, and Markwood, the HTS
Defendants knowingly made false and misleading statements about
the profitability of Hollywood Tans franchises, the quality of
Hollywood Tans equipment, and the franchisees' startup costs in
order to induce Plaintiffs into entering into business
relationships with HTS.  (RICO Case Statement at 6, 8, 12, 13.)

The alleged activities of the second of these enterprises –
the so-called Highline Leasing Enterprise – are of greater
relevance to the motions presently under consideration.  Three of
the Plaintiffs – Highlands Ranch, RMB, and Markwood – entered
into written agreements with Defendant Highline after purchasing
their Hollywood Tans franchises, under which Highline agreed to
lease tanning salon equipment to each Plaintiff.[2]  (Am. Compl. ¶¶
44, 73, 153.)  According to the Amended Complaint, over the
course of a four-year period,

> Defendants submitted or caused to be submitted to
> Plaintiffs, via facsimile over interstate telephone wires
> and by first-class U.S. mail, agreements and invoices.
> The invoices were faxed and/or mailed to Plaintiffs
> routinely and systematically.  Said Defendants knowingly
> and intentionally mailed, faxed, or caused to be mailed
> or faxed these fraudulent invoices, with the intent to
> induce Plaintiffs to make inflated payments to Highline
> Capital and Defendants.  Plaintiffs reasonably relied on
> the fraudulent invoices and submitted documents to their
> detriment and paid or were defrauded by the artificially

---

[2]  Specifically, Markwood entered into a lease agreement
with Highline on May 9, 2005.  (Highline Br. Ex. 4.)  Highlands
Ranch entered into a lease agreement with Highline on October 28,
2005.  (Highline Br. Ex. 9.)  RMB entered into a lease agreement
with Highline on April 20, 2006.  (Highline Br. Ex. 13.)

inflated invoices sent to them.
(Id. at ¶ 45.)  The Amended Complaint alleges that Highline
perpetrated this fraud by "manipulat[ing] the financing
arrangements and fraudulently charg[ing] [Plaintiffs] for
equipment [they] never received."  (Id. at ¶¶ 48, 153.)

Plaintiffs' RICO Case Statement, filed after Highline filed
its motion to dismiss, fleshes out these somewhat skeletal
allegations.[3]  According to the RICO Case Statement, through an
arrangement between HTS and Highline, the three Plaintiffs who
obtained financing for tanning salon equipment through Highline
were provided misleading and intentionally vague leasing
agreements and invoices by facsimile and United States mail,
which enabled Highline (1) to lease substandard and used
equipment to Plaintiffs while charging the leasees for new
equipment, and (2) to bill Plaintiffs for equipment that they
never ordered or received.  (RICO Case Statement at 7, 10, 16.)
Specifically, according to Plaintiffs' allegations, these
agreements

> each contained only a Delivery and Acceptance Certificate
> and an Equipment Schedule.  Conspicuously, on each of the

---

[3]  The RICO Case Statement was filed pursuant to Magistrate
Judge Donio's April 21, 2008 Rico Case Order [Docket Item 31].
Under Appendix O to the Local Civil Rules, magistrate judges are
authorized to enter RICO case orders, under which parties
asserting civil RICO claims are required to submit a
"supplemental pleading which shall include the facts the
plaintiff is relying upon to initiate [a] RICO complaint . . ."
L. Civ. R. App. O.

> three Plaintiff/Highline customers['] schedules, the
> actual portion devoted to the description of the given
> equipment in question[] each stated only "See Exhibit A
> Attached hereto and made a part hereof" but for which
> none of the Plaintiffs received the exhibit.

(Id. at 16.)  In other words, Plaintiffs claim that Highline deliberately omitted information in the lease agreements and invoices that was necessary for the Plaintiff-leasees to ascertain the precise products for which they were being billed. (Id.)

By concealing such information, Plaintiffs allege, Highline was able to bill Plaintiffs for equipment they never received and for new equipment when they had, in fact, received used equipment.  (Id. at 7, 10, 16.)  As Plaintiffs allege, "Defendants knowingly and intentionally mailed, faxed, or caused to be mailed or faxed [] fraudulent invoices, with the intent to induce Plaintiffs to make inflated payments to Highline and HTS." (Id. at 16.)  While Plaintiffs allege that they received a very large number of such allegedly fraudulent invoices from Highline because the above-described practice was "the regular way of operating [of] the Corporate Defendants," (id. at 15), they have identified multiple specific instances which they claim are reflective of Highline's allegedly fraudulent billing practices. In particular, Plaintiff Highlands Ranch alleges that it received invoices from Highline charging it for equipment it never received on March 1, 2006, July 1, 2006, and August 1, 2006.

7

(<u>Id.</u> at 7.)  Additionally, Plaintiff RMB alleges that it received an invoice from Highline charging it for equipment it did not receive, and inflating the prices for some equipment it did receive, in April 2006.  (<u>Id.</u> at 10; Am. Compl. ¶ 158.)

In furtherance of this scheme to overcharge the Highline leasees, Plaintiffs allege, Highline and HTS interfered with Plaintiffs' capacity to contact Highline directly, which reinforced Defendants' ability to overcharge Plaintiffs by inhibiting them from accessing from Highline documentation pertaining to their financial obligations.  According to Plaintiffs, the leasees were precluded from contacting Highline regarding the allegedly fraudulent invoices altogether.  (RICO Case Statement at 7.)  With regard to Plaintiff Highlands Ranch, for example, Plaintiffs allege that "all efforts to obtain . . . documentation directly from Highline, or communicate [with Highline] in any way, were met with angry responses, including statements from HTS that it would handle the financing and that [Highlands Ranch] could not communicate with Highline . . . [or] review the full loan documentation."  (<u>Id.</u>)  According to Plaintiffs, the Defendants employed such efforts to keep Highline at a distance from Plaintiffs in order to facilitate the fraudulent billing scheme described above.  (<u>Id.</u>)

**B.   Procedural History**

Plaintiffs filed their Complaint [Docket Item 1] in this

action on November 29, 2007, and filed an Amended Complaint
[Docket Item 3] on January 29, 2008.[4]  The Complaint asserts
claims of fraud (Count I); "declaration - unconscionable
franchise agreements" (Count II); intentional misrepresentation
(Count III); negligent misrepresentation (Count IV); breach of
contract (Count V); breach of covenant of good faith and fair
dealing (Count VI); fraudulent concealment (Count VII); violation
of the Maryland Franchise Act, Md. Code Ann. § 14-227 (Count
VIII); violation of the Colorado Deceptive Trade Practices Act,
C.R.S. 6-1-105 (Count IX); violation of the Ohio Business
Opportunity Plans Act, Ohio R.C. § 1334 (Count X); violation of
RICO, 18 U.S.C. § 1962(c) (Count XI); conspiracy to violate RICO
(Count XII); and unjust enrichment (Count XIII).  Shortly after
Plaintiffs filed their Amended Complaint, Defendant HT
Franchising filed a Counterclaim against Plaintiffs Grandsole and
Markwood [Docket Item 19] and filed a motion seeking preliminary
injunctive relief to enjoin Grandsole and Markwood from using the
Hollywood Tans trademark, which this Court granted in an Order

---

[4]  Approximately ten percent of the Amended Complaint is
devoted to a lengthy narrative introduction which portrays this
dispute as a "modern-day medieval tragedy," (Am. Compl. at 2), in
which the Defendants are depicted as a "lord and his nobles,"
(id. at 4), and the Plaintiffs are portrayed as exploited
"serfs." (Id. at 5.)  Needless to say, in the context of Rule
9(b), Fed. R. Civ. P., under which allegations of fraud must be
pleaded with particularity, such rhetorical flourishes are
unhelpful to Plaintiffs' cause.

dated May 22, 2008 [Docket Item 67].[5]

During the pendency of the parties' preliminary injunction motion practice, the HTS Defendants and Highline filed the motions presently under consideration, to the merits of which the Court now turns.

## III. DISCUSSION

### A.   Standard of Review

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

> While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level."

Phillips, 515 F.3d at 234.  "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief

---

[5]   In its motion for preliminary injunctive relief, Defendant HT Franchising also sought an order compelling Grandsole and Markwood to comply with a non-compete clause contained in their franchise agreements.  HT Franchising subsequently withdrew this aspect of its motion without prejudice to renewal [Docket Item 92].

above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" <u>Victaulic Co. v. Tieman</u>, 499 F.3d 227, 234 (3d Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, --- U.S. ----, 127 S. Ct. 1955, 1965 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, --- U.S. ----, 127 S. Ct. at 1964-65 (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

> "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. [<u>Twombly</u>, 127 S. Ct. at 1965 n.3.] This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. <u>Id.</u>

<u>Phillips</u>, 515 F.3d at 234. "Generally, in ruling on a motion to dismiss, a district court relies [only] on the complaint, attached exhibits, and matters of public record." <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007) (citation omitted).

**B.   HTS Defendants' Motion to Dismiss**

The HTS Defendants have moved to dismiss Plaintiffs' claims against them and compel the Plaintiffs to arbitrate this dispute, citing the arbitration clause in the parties' franchise

11

agreements.  According to the HTS Defendants, irrespective of the
merits of Plaintiffs' claims, the parties' agreements contain
broad and unequivocal provisions requiring arbitration of "[a]ll
disputes, controversies or claims arising out of or relating to
this Agreement," (HTS Defs.' Br. Exs. A-D, section 17.L), which
requires that the Court dismiss this action and compel Plaintiffs
to arbitrate the matters raised in their Amended Complaint.

    For the reasons set forth herein, the Court will deny the
HTS Defendants' motion to dismiss.  As the Court of Appeals has
repeatedly emphasized, "the Federal Arbitration Act (FAA), 9
U.S.C. §§ 1-16, provides that arbitration agreements are
enforceable to the same extent as other contracts, and
establishes a strong federal policy in favor of the resolution of
disputes through arbitration."  Morales v. Sun Constructors,
Inc., 541 F.3d 218, 221 (3d Cir. 2008) (internal quotations and
citations omitted).  There are, however, two threshold questions
that the Court must answer when deciding a motion to compel
arbitration: "(1) whether a valid agreement to arbitrate exists
and (2) whether the particular dispute falls within the scope of
that agreement."  Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d
529, 532 (3d Cir. 2005) (citation omitted).  At this stage of the
litigation, the HTS Defendants' motion falls short on the first

of these questions.[6]

In light of the fact that, prior to the commencement of this action, Defendant HTS assigned its rights and obligations under the franchising agreements to Defendant HT Franchising, (Am.

---

[6] As the following discussion makes clear, the Court denies the HTS Defendants' motion on the narrow grounds that the validity of an existing arbitration agreement between HTS and Plaintiffs is a live question in this case. However, it bears noting, in the event that this matter is raised at a subsequent stage in this case, that the majority of the arguments Plaintiffs raise in opposition to the HTS Defendants' motion are meritless and would not bar an order compelling arbitration.

First, Plaintiffs' argument that the franchise agreements are unconscionable adhesion contracts is without merit, since such claims, which target the contract as a whole (rather than the arbitration clause itself), are themselves arbitrable:

> It is well settled that a claim or defense of fraudulent inducement, when it challenges generally the enforceability of a contract containing an arbitration clause rather than specifically the arbitration clause itself, may be subject to arbitration. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967) . . . . Claims of unconscionability and adhesion contracts are similarly included within the Prima Paint rule.

JLM Industries, Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 170 (2d Cir. 2004) (some internal quotations and citations omitted). Second, Plaintiffs' suggestion that their claims do not "aris[e] out of or relat[e] to" the arbitration agreements, (HTS Defs.' Br. Exs. A-D, section 17.L), because Plaintiffs assert statutory claims under RICO, is unpersuasive. As the abundance of cases cited by the HTS Defendants indicate, such claims are arbitrable. See, e.g., Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 242 (1987); Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085-86 (8th Cir. 2001). Finally, Plaintiffs' suggestion that the HTS Defendants have waived any right to compel arbitration because HT Franchising (a separate Defendant) filed a motion for a preliminary injunction and has thereby "chosen to litigate" this case, (Pls.' Opp'n Br. at 8), is utterly unconvincing, since one party's litigation decisions do not waive a separate party's rights.

Compl. ¶ 18), the Court cannot, at this stage, conclude that "a valid agreement to arbitrate [presently] exists" between HTS and Plaintiffs. <u>Trippe</u>, 401 F.3d at 532.  As the Court of Appeals explained in <u>Trippe</u>, "when an assignee assumes the liabilities of an assignor, it is bound by an arbitration clause in the underlying contract."  <u>Id.</u> (citation omitted).  Because "an assignment cannot alter a contract's bargained-for remedial measures," <u>id.</u> at 533 (citation omitted), a corollary to the principle that an assignee is bound by the arbitration clause in an assigned contract is that "an assignment ordinarily extinguishes the right [of the assignor] to compel arbitration." <u>Affymax, Inc. v. Johnson & Johnson</u>, 420 F. Supp. 2d 876, 879 (N.D. Ill. 2006); <u>see</u> <u>also</u> Restatement (Second) of Contracts § 317(1) (1979) ("An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance"); <u>Robert Lamb Hart Planners and Architects v. Evergreen, Ltd.</u>, 787 F. Supp. 753, 757 (S.D. Ohio 1992) ("A valid assignment transfers a right from the assignor to the assignee.").

The extent to which HTS transferred its rights and obligations under the franchise agreements to HT Franchising is an unresolved issue in this case that precludes granting the HTS

Defendants' motion to dismiss and compel arbitration.  That is, if, as Plaintiffs appear to allege in the Amended Complaint, HTS assigned the entirety of its rights under the franchise agreements to HT Franchising, its right to compel arbitration under those agreements "is extinguished."[7]  Restatement (Second) of Contracts § 317(1).  Given that the Court has nothing before it bearing upon the respective rights of HTS and HT Franchising apart from Plaintiffs' allegations in the Amended Complaint, the Court is in no position to determine whether (or if) HTS retained any rights, including the right to arbitration, under its franchising agreements with Plaintiffs following the assignment to HT Franchising.

In light of Plaintiffs' allegations that HTS assigned all such rights to HT Franchising, however, which the Court must credit at this stage of the litigation, see Phillips, 515 F.3d at 231, the Court will deny the HTS Defendants' motion to dismiss and compel arbitration.

**C.   Highline's Motions**

In its first motion, Highline seeks to dismiss Plaintiffs' claims for common law fraud, violations of RICO, RICO conspiracy, and unjust enrichment, and seeks a more definite statement from Plaintiffs regarding their claims for negligent

---

[7]   In that case, HT Franchising would, of course, retain the right to compel Plaintiffs to arbitrate their dispute with it.

misrepresentations and fraudulent concealment.  Highline has also moved for sanctions pursuant to Rule 11, Fed. R. Civ. P.  For the reasons that follow, the Court will grant Highline's motion to dismiss Plaintiffs' claim for unjust enrichment in Count XIII of the Amended Complaint, and will deny the remainder of the relief it seeks.

> 1. <u>RICO Claims</u>

In its motion to dismiss, Highline argues that Plaintiffs fail to state claims for RICO and RICO conspiracy against it, and that these claims must accordingly be dismissed.  As the Court explains below, at this stage of the litigation, at which Plaintiffs' allegations must be taken as true and at which Plaintiffs receive the benefit of all favorable inferences from the facts pled in their Amended Complaint together with Plaintiffs' RICO Case Statement, the Court finds that Plaintiffs have adequately pleaded a claim for RICO and RICO conspiracy against Highline, and will deny Highline's motion to dismiss these claims.

Section 1962(c) of the RICO statute, under which Plaintiffs' primary RICO claim is brought, provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  "In order to plead a violation of RICO, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004) (citation omitted).  To adequately plead a pattern of racketeering activity, a plaintiff must allege at least two predicate acts of racketeering, which acts may include violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343.[8]  Id.

As this Court recently recognized,

> When pleading a claim of fraud, a plaintiff must plead "the circumstances constituting fraud or mistake . . . with particularity." Fed. R. Civ. P. 9(b).  A plaintiff is not required to "plead the 'date, place or time' of the fraud, so long as plaintiff uses an alternative means of injecting precision and some measure of substantiation into their allegations."  Rolo v. City Inv. Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (quoting Seville Indus. Machinery v. Southmost Machinery, 742 F.2d 786, 791 (3d Cir. 1984)).  To meet this standard, the subject and nature of each misrepresentation must be adequately pled.  See Seville Indus. Machinery, 742 F.2d at 791.  A court must apply the heightened pleading standards of Rule 9(b) in accordance with the rule's underlying purpose – namely (a) to put the defendant on notice of the precise misconduct surrounding the allegation of fraud asserted

---

[8]  As the Court of Appeals has explained,

> [t]he federal mail and wire fraud statutes prohibit the use of the mail or interstate wires for purposes of carrying out any scheme or artifice to defraud.  A scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension.

Lum, 361 F.3d at 223 (internal quotations and citations omitted).

> against it and (b) to guard against "spurious charges of
> immoral or fraudulent behavior."  See id. at 791; see
> also Lum, 361 F.3d at 224; New Jersey Sports Prod., Inc.
> v. Don King Prod., Inc., 1997 U.S. Dist. LEXIS 23209 at
> *42 (D.N.J. Oct. 28, 1997) (holding that "[t]he central
> inquiry . . . is whether the complaint is sufficiently
> precise to place the defendant on notice . . . ")
> (emphasis added) . . . . [Moreover,] courts in this
> District have held that "when the transactions are
> numerous and take place over an extended period of time,
> less specificity in pleading fraud is required . . . . "
> Kronfeld v. First Jersey Nat'l Bank, 638 F. Supp. 1454,
> 1465 (D.N.J. 1986).

South Broward Hosp. Dist. v. MedQuist Inc., 516 F. Supp. 2d 370,

384-85 (D.N.J. 2007) (footnote omitted); see also In re

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir.

1997).

### a.   Pattern of Racketeering Activity

With these considerations in mind, the Court finds that

Plaintiffs have adequately pleaded a RICO claim against Defendant

Highline under section 1962(c).  Highline's arguments focus most

strenuously upon the requirement that a RICO plaintiff allege

with particularity facts sufficient to show a pattern of

racketeering activity.  According to Highline, Plaintiffs'

allegations relating to Highline's allegedly fraudulent conduct

amount to little more than conclusory or boilerplate statements

that do not satisfy Rule 9(b)'s heightened pleading standard.

Moreover, Highline argues, even if Plaintiffs' pleadings were not

deficient for lack of specificity, the allegations fail to state

a RICO claim as a matter of law because they fail to suggest that

"the racketeering predicates . . . amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989).

The Court is not persuaded by either of these arguments.[9] First, the Court finds that Plaintiffs' allegations of predicate acts of racketeering activity are sufficient to put Highline "on notice of the precise misconduct surrounding the allegation of fraud asserted against it and [] to guard against spurious charges of immoral or fraudulent behavior." MedQuist, 516 F. Supp. 2d at 384 (internal quotations and citation omitted). Plaintiffs' Amended Complaint and RICO Case Statement provide details indicating that HTS and Highline induced Plaintiffs into entering into deceptively vague leasing agreements with Highline that contained little to no description of the equipment they were leasing, and that Highline thereafter exploited such vagueness by mailing and faxing to the leasee-Plaintiffs misleading invoices that charged these Plaintiffs for equipment they did not receive, and for new equipment when they received used equipment. (RICO Case Statement at 7, 10, 16; Am. Compl. ¶¶ 45, 48, 153.) Although the pleadings do not identify with

---

[9] The Court does not disagree with Highline's observation that Plaintiffs' pleadings are replete with repetitive invocations of the elements of a RICO cause of action and boilerplate language. Nonetheless, as the Court explains, infra, the pleadings – particularly the RICO Case Statement – contain sufficient factual allegations to cross Rule 9(b)'s specificity threshold and state a claim.

19

precision each and every allegedly fraudulent invoice each Plaintiff received, Plaintiffs have identified numerous specific dates on which some of the allegedly fraudulent invoices were received, (RICO Case Statement at 7, 10), and have identified particular pieces of equipment (such as high-pressure tanning booths) for which they were charged by Highline but which they never received.[10]   (Id.)   These allegations, which Plaintiffs indicate are representative of Highline's allegedly fraudulent billing practices over the course of a protracted period, are more than adequate to put Highline on notice of the conduct underlying Plaintiffs' claims, and are sufficiently specific to address Rule 9(b)'s concern over the in terrorem risk of nonspecific fraud claims.

Nor is Highline's argument that Plaintiffs have failed to plead facts suggestive of a "pattern of racketeering activity" convincing.  § 1962(c).  As the parties recognize, in order to establish the requisite pattern of racketeering activity, a

---

[10] As the Court recognized, supra, "when the transactions are numerous and take place over an extended period of time, less specificity in pleading fraud [may be] required."  Kronfeld, 638 F. Supp. at 1465 (recognizing that "when the transactions are numerous and take place over an extended period of time, less specificity in pleading fraud is required").  While a RICO plaintiff may not circumvent Rule 9(b)'s requirements simply by alleging that the defendant's fraudulent conduct took place over an extended period of time, Plaintiffs have identified with precision certain allegedly fraudulent acts committed by Highline which they allege are representative of the misconduct allegedly committed over the course of many years.  These allegations suffice to meet Rule 9(b)'s requirements.

plaintiff must allege that predicate racketeering acts are related, and that they "amount to or pose a threat of continued criminal activity." H.J., 492 U.S. at 239. "Under the . . . 'relatedness[]' requirement[,] . . . predicate acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Tabas v. Tabas, 47 F.3d 1280, 1292 (3d Cir. 1995) (some internal quotations and citations omitted). Highline does not appear to challenge the relatedness of the predicate acts alleged in the pleadings herein, and the Court finds that Plaintiffs' allegations of similarly fraudulent billings sent to different Hollywood Tans franchisees satisfy the relatedness requirement at this stage of the litigation.

As to the "continuity" requirement of a RICO claim, the Supreme Court has recognized that continuity "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J., 492 U.S. at 242. The "temporal concept" of continuity, id., may thus be established by demonstrating either (1) closed-ended continuity through allegations of repeated predicate acts extending over a "substantial" (at least twelve-month) period, Tabas, 47 F.3d at 1293; or (2) open-ended continuity through allegations that "the

predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes) . . . " <u>H.J.</u>, 492 U.S. at 243.

The Court finds that Plaintiffs' pleadings survive Highline's motion to dismiss under either a closed- or open-ended continuity analysis. <u>See Tabas</u>, 47 F.3d at 1294-95. As for closed-ended continuity, the Court of Appeals has recognized that multiple predicate acts of racketeering activity occurring over a period of twelve months or longer may satisfy <u>H.J.</u>'s requirement of long-term conduct under the closed-ended continuity analysis. <u>Tabas</u>, 47 F.3d at 1293. Here, construing the pleadings in Plaintiffs' favor, the allegations indicate that Highline committed predicate acts as early as May 9, 2005, when it entered into one of the three allegedly deceptive lease agreements at issue herein, (Highline Br. Ex. 4), and Plaintiffs have claimed that Highline sent to Highlands Ranch one of the many allegedly fraudulent invoices as late as August 2006. (RICO Case Statement at 7.) The Court finds that the repeated mailing of allegedly fraudulent invoices to multiple franchisees over the course of at least fifteen months is sufficient, at this stage of the litigation, to satisfy <u>H.J.</u>'s and <u>Tablas</u>'s requirements for closed-ended continuity.[11]

---

[11] The Court does not agree with Highline's argument that the alleged fraudulent scheme was "completed" as to each Plaintiff when it entered into the lease agreement with Highline,

The Court likewise finds that Plaintiffs have, at the motion to dismiss stage, satisfied the requirements for pleading open-ended continuity.  As the Court of Appeals explained in <u>Tablas</u>:

> Under <u>H.J. Inc.</u>, if a RICO action is brought before a plaintiff can establish long-term criminal conduct, the "continuity" prong may still be met if a plaintiff can prove a threat of continued racketeering activity. Whether the predicate acts constitute a threat of continued racketeering activity depends on the specific facts of each case, but <u>H.J. Inc.</u> suggests that open-ended continuity may be satisfied where it is shown that the predicates are a <u>regular way of conducting defendant's ongoing legitimate business</u> or of conducting or participating in an ongoing and legitimate RICO enterprise.

<u>Tabas</u>, 47 F.3d at 1295 (internal quotations and citations omitted, emphasis added).  Plaintiffs have alleged that conduct attributed to the HTS Defendants and Highline in this case was consistent with "the regular way of operating [of] the Corporate Defendants," (RICO Case Statement at 15), and the fact that three unrelated franchisee-corporations in three different states allegedly encountered the same fraudulent leasing practices lends support and plausibility to such an allegation.  At the motion to dismiss stage, the Court finds that Plaintiffs have met the

_____

and that Highline's subsequent mailing of fraudulent invoices to each Plaintiff in furtherance of the alleged overbilling scheme thus did not constitute additional predicate acts.  Such an approach would permit racketeers to escape liability under RICO simply by concentrating their fraudulent conduct and targeting a single victim multiple times.  As the Court of Appeals explained in <u>Tabas</u>, Highline committed a predicate act for RICO purposes "[e]ach time [it] . . . made a questionable charge[] or, [through its allegedly fraudulent invoices,] received compensation to which [it was] not entitled . . . " <u>Tabas</u>, 47 F.3d at 1294.

pleading requirements for an open-ended continuity analysis under RICO.

b. RICO Enterprise

The Court likewise finds that Plaintiffs' pleadings allege the existence of a RICO enterprise.  "A proper § 1962(c) claim must allege 'the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name.'"  MedQuist, 516 F. Supp. 2d at 388 (quoting Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001)).  RICO defines the term "enterprise" to "include any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  § 1961(4). Ultimately, in order to prevail on their RICO claim, Plaintiffs will have to prove three Turkette factors in order to establish the existence of a RICO enterprise:

> In United States v. Turkette, 452 U.S. 576, 583 (1981), the Supreme Court stated that an enterprise "is an entity separate and apart from the pattern of activity in which it engages," and that it is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." In United States v. Riccobene, 709 F.2d 214, 222 (3d Cir. [1983]), cert. denied, 464 U.S. 849 (1983), "we construed Turkette to require proof of each of the three sub-elements referred to by the Court in this passage": (1) proof of an ongoing organization, (2) proof that the associates function as a continuing unit, and (3) proof that the enterprise is an "entity separate and apart from the pattern of activity in which it engages." United States v. Pelullo, 964 F.2d 193, 211 (3d Cir. 1992) (citing Riccobene, 709 F.2d at 221-24).

24

United States v. Console, 13 F.3d 641, 650 (3d Cir. 1993).

"At the motion to dismiss stage, [however,] it is enough
that a plaintiff state what entities it believes constitute an
enterprise – a plaintiff does not have to allege the [Turkette]
elements to prove that an enterprise actually exits." Darrick
Enterprises v. Mitsubishi Motors Corp., No. 05-4359, 2007 WL
2893366, at *7 (D.N.J. Sept. 28, 2007) (citing Seville Indus.
Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786,
789-90 (3d Cir. 1984)); see also Lickman v. Rivkin, No. 05-1793,
2006 WL 1744753, at *6-7 (M.D. Pa. June 21, 2006); Bristol Tp. v.
Independence Blue Cross, No. 01-4323, 2001 WL 1231708, at *7
(E.D. Pa. Oct. 11, 2001); Emcore Corp. v. PricewaterhouseCoopers
LLP, 102 F. Supp. 2d 237, 263-64 (D.N.J. 2000).  So long as a
civil RICO plaintiff pleads "facts indicating that the various
associates functioned as a unit," the plaintiff has satisfied its
burden at the motion-to-dismiss stage.  In re Ins. Brokerage
Antitrust Litigation, MDL Docket No. 1663, 2007 WL 1062980, at *8
(D.N.J. Apr. 5, 2007) (internal quotations and citations
omitted).

Plaintiffs have satisfied their burden as to the enterprise
element of their RICO claim.  Plaintiffs have alleged facts
sufficient at this stage to suggest that the associates of the
Highline-HTS enterprise – "an association-in-fact composed of
Highline, its agents, officers, and employees, and HTS, its

25

agents, officers, and employees," (RICO Case Statement at 4) –
functioned as a unit in furtherance of the alleged scheme to
deceive and overcharge Hollywood Tans franchisees.  Plaintiffs'
pleadings are sufficiently specific as to the distinct role that
each of the corporate associates played in the alleged
enterprise, with HTS allegedly requiring new franchisees to use
Highline's leasing and financing services, Highline utilizing
deceptive and inaccurate leasing agreements and invoices to
overcharge franchisees, and both entities collaborating to keep
franchisees at a distance from Highline so as to prevent them
from acquiring complete information about the nature of their
loans.  (Id. at 25-6.)  According to Plaintiffs, the two distinct
legal entities of HTS and Highline were able to coordinate this
alleged scheme through the sustained association between the
officers of each company.[12]  (Id.)  At this stage, at which "it
is enough that a plaintiff state what entities it believes
constitute an enterprise," Darrick, 2007 WL 2893366, at *7, these

---

[12]  Moreover, as the Court of Appeals has recognized, "the
proof of the enterprise may 'coalesce' with the proof of the
pattern [of racketeering activity], i.e., [] the different
conclusions may be inferred from proof of the same predicate acts
. . . . [I]n the appropriate case, the enterprise can be inferred
from proof of the pattern."  United States v. Pelullo, 964 F.2d
193, 212 (3d Cir. 1992) (citation omitted).  The allegations of
the predicate acts herein, in conjunction with the alleged
sustained collaboration by HTS and Highline to keep leasees at
bay from Highline in order to prevent them from acquiring
sufficient information about their payments to uncover the
pattern of overcharging, are themselves circumstantially
suggestive of the existence of the enterprise.

allegations are more than sufficient to survive Highline's motion
to dismiss.

Because Plaintiffs have adequately stated a RICO claim under
section 1962(c) against Highline, the Court will deny Highline's
motion to dismiss Plaintiffs' principal RICO claim.

c.   <u>RICO Conspiracy</u>

The Court will likewise deny Highline's motion to dismiss
Plaintiffs' claim for conspiracy to violate RICO under section
1962(d).  As the Court of Appeals has explained, a RICO plaintiff
who is able to sustain his burden of pleading a violation under
section 1962(c) faces a less onerous burden in pleading a related
section 1962(d) violation:

> In order to state a claim under RICO subsection
> [1692](d), a plaintiff must allege (1) agreement to
> commit the predicate acts of fraud, and (2) knowledge
> that those acts were part of a pattern of racketeering
> activity conducted in such a way as to violate section
> 1962(a), (b), or (c).  Allegations of conspiracy are not
> measured under the Fed. R. Civ. P. 9(b) standard, which
> requires greater particularity of allegation of fraud,
> but are measured under the more liberal Fed. R. Civ. P.
> 8(a) pleading standard.  A conspiracy claim must also
> contain supportive factual allegations.  The allegations
> must be sufficient to describe the general composition of
> the conspiracy, some or all of its broad objectives, and
> the defendant's general role in that conspiracy.

<u>Rose v. Bartle</u>, 871 F.2d 331, 366 (3d Cir. 1989) (internal
quotations, citations, and footnotes omitted).

Plaintiffs' allegations suffice to state a section 1962(d)
claim.  Plaintiffs allege that Highline agreed with the HTS
Defendants to send fraudulent invoices to the three leasee-

27

Plaintiffs, (RICO Case Statement at 24), and have pleaded "the
requisite mens rea comprising knowing furtherance of the
enterprises' affairs," <u>Rose</u>, 871 F.2d at 367, by alleging that
"Defendants' motive in conspiring to operate the Highline leasing
enterprise through a pattern of racketeering activity was to
fraudulently obtain illegal profits, in furtherance of the
Fraudulent Scheme." (Am. Compl. ¶ 274.) Moreover, as the
preceding discussion of Plaintiffs' section 1962(c) claim makes
clear, Plaintiffs' allegations regarding the objectives and
composition of the conspiracy, and Highline's conduct in
advancing those objectives, "contain sufficient information . . .
to enable the opposing side to prepare an adequate responsive
pleading" to Plaintiffs' RICO conspiracy claim. <u>Rose</u>, 871 F.2d
at 366 n.60 (quoting 5 C. Wright & A. Miller, Federal Practice
and Procedure § 1233 at 181).

The Court will accordingly deny Highline's motion to dismiss
Plaintiffs' section 1962(d) claim.

> 2. <u>Common Law Fraud Claims</u>

Highline has likewise moved to dismiss Plaintiffs' claims
for common law fraud. Highline advances two arguments in support
of its motion to dismiss Plaintiffs' common law fraud claims,
neither of which is persuasive. First, Highline argues that
Plaintiffs have failed to plead their claims of common law fraud
with particularity in accordance with Rule 9(b), Fed. R. Civ. P.

For the reasons set forth, <u>supra</u>, in discussing the sufficiency
of Plaintiffs' allegations of Highline's predicate acts under
RICO section 1962(c), the Court finds that Plaintiffs have
inserted sufficient particularity into their pleadings of fraud
to survive Highline's motion to dismiss.[13]

Highline's second argument is equally unavailing.  According
to Highline, Plaintiffs' common law fraud claims are barred by
the economic loss doctrine, which, stated generally, "prohibits
plaintiffs from recovering in tort economic losses to which their
entitlement flows only from a contract."  <u>Duquesne Light Co. v.
Westinghouse Elec. Corp.</u>, 66 F.3d 604, 618 (3d Cir. 1995).
Because the parties' respective obligations are governed by the
lease agreements between Highline and the three Plaintiff-
leasees, Highline argues, their fraud claims are barred by the
economic loss doctrine.

The problem with this argument is that, under Colorado and
Maryland law,[14] "the economic loss rule applies only to tort

---

[13] As with Plaintiffs' RICO claims, Plaintiffs' RICO Case
Statement adds considerable clarity to the allegations against
Highline in the Amended Complaint.  <u>See Darrick Enterprises v.
Mitsubishi Motors Corp.</u>, No. 05-4359, 2007 U.S. Dist. LEXIS 4054,
at *10 (D.N.J. Jan. 19, 2007) ("although the RICO case statement
is not directed to common law fraud claims, the statement . . .
serve[s] to clarify those claims as well because Defendants'
alleged misconduct is the basis for both claims").

[14] When faced with choice of law questions for tort claims
(here, between the law of Colorado-based Highline and Maryland-
based RMB and Markwood), this Court, following New Jersey
substantive law, <u>see Berg Chilling Systems, Inc. v. Hull Corp.</u>,

claims based on negligence, and only to <u>some</u> negligence claims,"
not to intentional torts like the fraud claims asserted in Count
I.  <u>United Intern. Holdings, Inc. v. Wharf (Holdings) Ltd.</u>, 210
F.3d 1207, 1226 (10th Cir. 2000) (emphasis in original) (applying
Colorado law); <u>Potomac Constructors, LLC v. EFCO Corp.</u>, 530 F.
Supp. 2d 731 (D. Md. 2008) (explaining that under Maryland law,
"[u]nder the economic loss doctrine, plaintiffs are generally
precluded from bringing <u>negligence actions</u> to recover purely
economic losses") (emphasis added); <u>cf.</u> <u>Giles v. General Motors
Acceptance Corp.</u>, 494 F.3d 865, 875 (9th Cir. 2007) (noting
majority rule that "intentional tort claims such as fraud,
conversion, intentional interference, civil theft, abuse of
process, and other torts requiring proof of intent generally
remain viable despite economic loss doctrine," and that "[m]ost
courts that have applied the economic loss doctrine beyond
product liability cases have done so to bar recovery of economic
loss in negligence and strict liability").

Because Plaintiffs can maintain their common law fraud
claims against Highline notwithstanding the economic loss
doctrine, Highline's motion to dismiss Count I of this Amended

_____

435 F.3d 455, 462 (3d Cir. 2006), assesses whether there is an
"actual conflict" between the laws of the potentially interested
states on the issue in question, and, if so, ascertains the
interests each state has in applying its own law to the parties
and event in question.  See <u>Lebegern v. Forman</u>, 471 F.3d 424, 428
(3d Cir. 2006).  There is no actual conflict here, as neither
state applies the economic loss doctrine to fraud claims.

Complaint will be denied.

### 3.   Unjust Enrichment Claim

The Court will grant Highline's motion to dismiss Count XIII of the Amended Complaint, in which Plaintiffs assert claims for unjust enrichment against Highline.  As Highline argues, it is well-settled under Colorado and Maryland law[15] that "a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract."  Bedard v. Martin, 100 P.3d 584, 592 (Colo App. 2004); FLF, Inc. v. World Publications, Inc., 999 F. Supp. 640, 642 (D. Md. 1998) ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties.").  Plaintiffs do not deny that an express contract governs their respective relationships with Highline.  Their argument that they have pleaded unjust enrichment as an alternative theory of recovery under Rule 8(e)(2), Fed. R. Civ. P., is unavailing, because, having acknowledged in their pleadings the existence of these express contracts, there is no "alternative theory" that would permit their recovery in quasi-contract under Colorado or Maryland law.  See, e.g., Bedard, 100 P.3d at 592; FLF, Inc., 999 F. Supp. at 642.

---

[15]   See Note 14, supra.

31

The Court will accordingly grant Highline's motion to dismiss Count XIII of the Amended Complaint.

    4.  <u>Motion for More Definite Statement</u>

Highline has moved, pursuant to Rule 12(e), Fed. R. Civ. P., for a more definite statement of Plaintiffs' claims in Counts IV (negligent misrepresentations and omissions) and VII (fraudulent concealment – estoppel) of the Amended Complaint, arguing that Plaintiffs' allegations relating to these claims are "so vague or ambiguous that [Highline] cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). As this Court has explained:

> Courts in this District have held, by in large, that "[m]otions for a more definite statement are disfavored, and are generally limited to remedying unintelligible, rather than insufficiently detailed, pleadings." <u>Briley v. City of Trenton</u>, 164 F.R.D. 26, 30 (D.N.J. 1995). Rather than vagueness of certain pleadings, "[t]he basis for granting [a Rule 12(e)] motion is unintelligibility" and [] the complaint will be deemed sufficient for purposes of Rule 12(e) so long as a defendant "is able to respond, even if only with a 'simple denial, in good faith and without prejudice' . . . . " <u>Wood & Locker, Inc. v. Doran & Assocs.</u>, 708 F. Supp. 684, 691 (W.D. Pa. 1989) (citation omitted); <u>K-Tronik N.A., Inc. v. Vossloh-Schwabe Matsushita</u>, No. 06-0729, 2006 U.S. Dist. LEXIS 28265, *12-13 (D.N.J. May 8, 2006).

<u>Myers v. MedQuist, Inc.</u>, No. 05-4608, 2006 WL 3751210, at *7 (D.N.J. Dec. 20, 2006).

While the Court agrees with Highline that the alleged misrepresentations, omissions, and concealment underlying Plaintiffs' claims in Counts IV and VII are not easily discerned from the Amended Complaint, the allegations contained in

32

Plaintiffs' RICO Case Statement, which is "equivalent to a
supplemental pleading," L. Civ. R. App. O, "serve[s] to clarify
those claims," Darrick, 2007 U.S. Dist. LEXIS 4054, at *10, such
that Highline is capable of responding in good faith and without
prejudice.  Myers, 2006 WL 3751210, at *7.  Plaintiffs'
allegations of misrepresentation, omission, and concealment
obviously target Highline's alleged omission from Plaintiffs'
lease agreements the list of equipment that each leasee-Plaintiff
leased (the missing "Exhibit A" on the agreements, referenced
supra), the allegedly misleading invoices Highline subsequently
mailed, and Highline's alleged refusal to comply with Plaintiffs'
requests to view their loan documentation and equipment
schedules.  (RICO Case Statement at 7, 10, 16.)

     These allegations, particularly as they are supplemented by
Plaintiffs' RICO Case Statement, are not so vague that Highline
cannot, in good faith and without prejudice, frame a responsive
pleading.  As such, its motion for a more definite statement will
be denied.

     5.   <u>Motion for Rule 11 Sanctions</u>

     Having determined that Plaintiffs' RICO and common law fraud
claims survive Highline's motion to dismiss under Rule 9(b)'s
heightened pleading standard, the Court need not dwell long on
Highline's motion for sanctions against Plaintiffs under Rule 11,
Fed. R. Civ. P.  Rule 11 "imposes on counsel a duty to look

33

before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'"  <u>Lieb v. Topstone Indus.</u>, 788 F.2d 151, 157 (3d Cir. 1986).  "In other words, Rule 11 requires that an attorney who submits a complaint certify that it is not asserted for improper purposes, such as delay or harassment, and that there is a reasonable basis in fact and law for the claims made."  <u>Leuallen v. Borough of Paulsboro</u>, 180 F. Supp. 2d 615, 618 (D.N.J. 2002) (citation omitted) (noting as well that "Rule 11 is intended to discourage the filing of frivolous, unsupported, or unreasonable claims").  The Court of Appeals has noted that "the legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances, with reasonableness defined as an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact."  <u>Ford Motor Co. v. Summit Motor Products, Inc.</u>, 930 F.2d 277, 289 (3d Cir. 1991) (internal quotations and citations omitted).  "Generally, sanctions are prescribed only in the exceptional circumstance where a claim or motion is patently unmerit[ori]ous or frivolous."  <u>Id.</u> (internal quotations and citations omitted).

In support of its motion for Rule 11 sanctions, Highline reiterates arguments that the Court rejected, <u>supra</u>, in finding that Plaintiffs had adequately pleaded RICO claims under sections

34

1962(c) and (d).  Highline argues that Plaintiffs have failed to
plead the predicate acts of fraud with specificity, that
Plaintiffs have failed to satisfy section 1962(c)'s continuity
criterion, that Plaintiffs have not pleaded facts suggestive of a
section 1962(d) conspiracy, and that these purported shortcomings
demonstrate that Plaintiffs' attorneys did not have a reasonable
basis for asserting these claims.  Regardless of whether the
allegations in the Amended Complaint alone would have been
sufficient to state claims against Highline under sections
1962(c) and (d), the Court has found, <u>supra</u>, that Plaintiffs'
RICO claims, as the allegations in support thereof are
supplemented by the RICO Case Statement, are at this stage of the
litigation "warranted by existing law."[16]  Fed. R. Civ. P.
11(b)(2).  Highline's motion for Rule 11 sanctions will
accordingly be denied.

## IV. CONCLUSION

     For the reasons explained above, the Court will deny the HTS
Defendants' motion to dismiss, and grant Highline's motion to

---

     [16]  To the extent that Highline argues that Plaintiffs'
claims are "not well-grounded in fact," (Highline's Reply Br. at
2), the Court notes that it is not, at the motion to dismiss
stage, in a position to assess whether "the factual contentions
have evidentiary support or, if specifically so identified, will
likely have evidentiary support after a reasonable opportunity
for further investigation or discovery."  Fed. R. Civ. P.
11(b)(3).  Taking the facts alleged in the Amended Complaint and
RICO Case Statement as true, the Court has found that Plaintiffs
have stated viable claims against Highline under sections 1962(c)
and (d).

dismiss the claim asserted in Count XIII of the Amended Complaint against it but deny the remainder of the relief it seeks.  The accompanying Order will be entered.

_____

**December 1, 2008**          **s/ Jerome B. Simandle**
Date                          JEROME B. SIMANDLE
                              United States District Judge

36